**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALLEN MISKOWIEC, Individually and on Behalf of All Others Similarly Situated,  ) ) ) ) | |
| Plaintiff,  ) ) | Civil Action No. _____ |
| v.  ) ) ) | |
| STONE ENERGY CORPORATION, NEAL P. GOLDMAN, JOHN "BRAD" JUNEAU, DAVID I. RAINEY, CHARLES M. SLEDGE, JAMES M. TRIMBLE, DAVID N. WEINSTEIN, SAILFISH ENERGY HOLDINGS CORPORATION, and TALOS ENERGY LLC,  ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants,  ) ) ) | **JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Allen Miskowiec ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Stone Energy Corporation ("Stone Energy" or the "Company") against Stone Energy's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to merge the Company with Talos Energy LLC ("Talos").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "Registration Statement") to be filed with the Securities and Exchange Commission ("SEC") on December 29, 2017 by Sailfish Energy Holdings Corporation ("New Talos"). The Registration Statement recommends that Stone Energy stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Stone Energy will merge with Sailfish Merger Sub Corporation, with both Stone Energy and Talos becoming subsidiaries of New Talos. The Proposed Transaction was first disclosed on November 21, 2017, when Stone Energy and Talos announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which all the outstanding shares of common stock of Stone Energy will be exchanged for shares of New Talos (the "Merger Consideration"). Stone Energy stockholders will own 37% of the combined company, which is expected to have an enterprise value of approximately $2.5 billion.

3.     The Board started the process of selling the Company within weeks of emerging from bankruptcy, failing to give the Company time to determine the success of its reorganization. Instead, the Board determined to merge with Talos by July 1, 2017, just four months after announcing that it had emerged from bankruptcy.

4.     In its haste to find a transaction, the Board agreed to a transaction that undervalues the Company and gives greater ownership to Talos's stockholders. Petrie Partners Securities, LLC ("Petrie"), Stone Energy's financial advisor, found an implied equity ownership range as high as 52% for the Company, 15 points higher than the equity ownership agreed to by the Board.

5.     Furthermore, the Registration Statement is materially incomplete and contains

misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Stone Energy management, as well as the financial analyses conducted by Petrie.

6.  For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing a definitive registration statement ("Definitive Registration Statement") with the SEC or otherwise causing a Definitive Registration Statement to be disseminated to Stone Energy's stockholders, unless and until the material information discussed below is included in the Definitive Registration Statement or otherwise disseminated to Stone Energy's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

7.  Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Stone Energy.

8.  Defendant Stone Energy is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 625 E. Kaliste Saloom Road, Lafayette, Louisiana 70508. Stone Energy common stock trades on NYSE under the ticker symbol "SGY." Stone Energy is an oil and gas exploration company that develops and produces properties in the Gulf of Mexico.

9.  Defendant James M. Trimble has been interim-President and CEO of the Company since April 28, 2017, and has served as a director of the Company since February 28, 2017.

3

10.     Defendant Neal P. Goldman has been Chairman of the Board since March 1, 2017 and a director of the Company since February 28, 2017.

11.     Defendant John "Brad" Juneau has been a director of the Company since February 28, 2017.

12.     Defendant David I. Rainey has been a director of the Company since February 28, 2017.

13.     Defendant Charles M. Sledge has been a director of the Company since February 28, 2017.

14.     Defendant David N. Weinstein has been a director of the Company since February 28, 2017.

15.     Defendants Trimble, Goldman, Juneau, Rainey, Sledge and Weinstein are collectively referred to herein as the "Board."

16.     Defendant Talos is a Delaware limited liability company with its principal executive offices located at 500 Dallas Street, Suite 2000, Houston, Texas 77002.

17.     Defendant New Talos is a Delaware corporation formed by Stone Energy. At the closing of the Proposed Transaction, New Talos will become the ultimate parent company of Talos and Stone Energy.

18.     Sailfish Merger Sub Corporation is a Delaware corporation and wholly owned subsidiary of New Talos.

**JURISDICTION AND VENUE**

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Stone Energy is incorporated in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Stone Energy common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

23.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of November 21, 2017, Stone Energy had approximately 19.9 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file a Definitive Registration Statement with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  Stone Energy Emerges from Bankruptcy and Immediately Decides to Sell

24.     Stone Energy is an oil and gas exploration and production company that operates in the Gulf of Mexico. The Company's core strategy is to grow oil and gas reserves both on- and offshore and maintain relatively stable oil production in the Gulf of Mexico.

25.     On December 14, 2016, Stone Energy filed a petition under Chapter 11 of the United States Bankruptcy Code. The bankruptcy petition included a pre-packaged plan for reorganization of the Company, an amended version of which was confirmed on February 15, 2017.

26.     Stone Energy emerged from bankruptcy on February 28, 2017. The reorganization of the Company entailed the issuance of one million shares of Stone Energy stock (5% of total shares) to stockholders from before the bankruptcy, and 19 million shares (95% of total Stone Energy shares) issued to the Company's unsecured note holders. A new board of directors was installed, consisting of then-CEO David H. Welch and Defendants Goldman, Juneau, Rainey, Sledge, Trimble and Weinstein.

27.     Within two weeks of emerging from bankruptcy, at least three companies contacted Defendant Goldman about potential transactions. On March 14, 2017, the Board decided to evaluate strategic alternatives for the Company and agreed to engage Petrie as its

financial advisor. By the end of March 2017, the Board authorized Petrie to contact potential parties concerning strategic transactions. Over the course of the next three weeks, Petrie contacted 26 parties about a potential transaction. Of those, six entered into confidentiality agreements with the Company.

28.     On May 31, 2017, two months after the Board authorized Petrie to begin the process, the Board decided to set a deadline of June 19, 2017 for transaction proposals. Three proposals were received by June 21, 2017: Company A proposed a stock-for-stock merger with Stone Energy stockholders owning 30% of the combined company; Talos proposed  a combination of Talos and Stone Energy where Stone Energy stockholders held 35% of the combined company and the addition of three members of the Board on the combined company's board of directors; Company C proposed a stock-for-stock merger with Stone Energy as the surviving company with Company C's CEO and chairman continuing in that role for the combined company. Company C later informed Petrie that it would need three months, or at least until the end of September, to make a more specific proposal.

29.     As of June 21, 2017, Petrie had contacted 28 parties about a potential transaction. Seven of those parties had entered into confidentiality agreements with the Company, and six had conducted due diligence meetings.

30.     The Board countered the proposals made by Company A and Talos. To Company A, the Board suggested a combination where Stone Energy stockholders would own 40% of the combined company and four members of the Board to be named to the combined company's board of directors. To Talos, the Board suggested a combination where Stone Energy stockholders would own 39% of the combined company, the exchange of $102 million of Talos-issued senior unsecured notes held by funds into Stone Energy common stock, and four members

of the Board to be named to the combined company's board of directors. No explanation was provided for suggesting less ownership to Talos than Company A.

31.     Company A rejected the counterproposal. Talos countered on June 26, 2017, asking that the majority shareholders of Stone Energy exchange $102 million of their senior secured notes for Stone Energy common stock. The Board rejected this (without discussing with those noteholders). On June 28, 2017, Talos proposed a combination where four members of the Board would be named to the combined company's board of directors, $102 million of Talos-issued senior unsecured notes would be exchanged for Stone Energy common stock, and Stone Energy stockholders would own 37% of the combined company.

32.     Despite lesser ownership of the combined company, and without contacting Company A, Company C or any of the other parties who had conducted due diligence with Stone Energy, the Board agreed to enter into an exclusivity agreement with Talos on July 1, 2017. From then until November 21, 2017, when the Board entered into the Merger Agreement with Talos, New Talos, Sailfish Merger Sub Corporation and Talos Production LLC, no one at the Company attempted to contact Company C. No attempts were made to contact any of the other parties who signed confidentiality agreements. Instead, Talos' exclusivity was extended eight separate times.

33.     While the Board was negotiating a sale of the Company, Stone Energy's stock price increased more than 36%, from a closing price of $26.01 per share on March 1, 2017 to close at $35.49 per share on November 20, 2017.



34.    After the Company announced the Proposed Transaction the stock price tumbled, falling 15.5% to close at $29.97 on November 21, 2017. The stock fell as low as $24.04 per share on November 28, 2017.

35.    The stock price's drop after the Proposed Transaction was announced is evidence that the stockholders do not believe the deal to be fair. This is supported by the analyses of the Company's own financial advisor, which illustrate that the Proposed Transaction's ownership structure is imbalanced against Stone Energy stockholders. For example, Petrie's *Comparable Transaction Analysis* found an implied equity ownership of 52% for Stone Energy stockholders in New Talos, while the *Discounted Cash Flow Analysis* and the *Capital Market Comparison Analysis* each found an implied equity ownership as high as 47% for Stone Energy stockholders. Instead, Stone Energy stockholders will own 37% of New Talos.

36.    In addition, the Board has procured four seats on the board of directors of New Talos. Defendants Goldman, Juneau, Trimble and Sledge will be joining the New Talos board. Even though all four directors have only sat on the Stone Energy Board for less than a year, they will remain in a position of oversight and management at the combined company.

**B. The Preclusive Deal Protection Devices**

37.    As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

38.    By way of example, section 7.05(b) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of a competing proposal. Section 7.05(a) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning a competing proposal. Further, section 7.05 fails to provide a "go-shop" period that would allow the Board to rightfully seek out a better offer for the company

39.    Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Talos. For example, pursuant to section 7.05(d) of the Merger Agreement, the Company must notify Talos of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, section 7.05(e)(iii)(B) requires that the Board grant Talos at least five (5) business days to negotiate the terms of the Proposed Transaction to render the superior proposal no longer superior.   Talos is able to match the unsolicited offer because, pursuant to section 7.05(d) of the Merger Agreement, the Company must provide Talos with the identity of the party making the proposal, the material terms of the superior proposal and a written summary of oral communications concerning a competing proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

40.    In other words, the Merger Agreement gives Talos access to any rival bidder's information and allows Talos a free right to top any superior offer.  Accordingly, no rival bidder

is likely to emerge and act as a stalking horse for Stone Energy, because the Merger Agreement unfairly assures that any "auction" will favor Talos and allow Talos to piggy-back upon the due diligence of the foreclosed second bidder.

41.     In addition, pursuant to section 9.06(b) of the Merger Agreement, Stone Energy must pay Talos a termination fee of $24 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

42.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of the adequacy of the Merger Consideration.

### C. The Materially Incomplete and Misleading Registration Statement

43.     The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to Stone Energy stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

44.     On December 29, 2017, Defendants filed the Registration Statement with the SEC. The purpose of the Registration Statement is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on

whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Stone Energy stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts

45.     The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Registration Statement indicates that in connection with the rendering of Petrie's fairness opinion, Petrie reviewed "certain non-public projected financial and operating data relating to Stone Energy and Talos Energy prepared and furnished to Petrie Partners by the respective management teams and staffs of Stone Energy and Talos Energy." Accordingly, the Registration Statement should have, but failed to, provide certain information in the projections that Stone Energy's management provided to the Board and Petrie.

46.     Notably, Defendants failed to provide Stone Energy's financial projections for fiscal years 2017 to 2021 for: operating revenues (including oil production, natural gas production, natural gas liquids production, and other operational income); lease operating expenses; transportation, processing and gathering expenses; production taxes; depreciation, depletion and amortization; accretion expense; salaries and G&A expenses; incentive compensation expense; derivative expense; income taxes; and changes in net working capital. In addition, the Registration Statement fails to disclose Talos's financial projections for fiscal years 2017 to 2021 for: operating revenues (including oil production, natural gas production, natural gas liquids production, and other operational income); lease operating expenses; transportation, processing and gathering expenses; production taxes; depreciation, depletion and amortization;

accretion expense; salaries and G&A expenses; incentive compensation expense; derivative expense; income taxes; and changes in net working capital. The Registration Statement also fails to provide the financial projection line items for both Stone Energy and Talos, as used by Petrie in its *Discounted Cash Flow Analysis*, for all years of the analysis, including but not limited to production and capital expenditures (by hydrocarbon type, reserve category, development status and geographic location) and other line items used in the calculation of "after-tax free cash flow."   This omitted information is necessary for Stone Energy stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning Petrie's Financial Analyses

47.     First, with respect to the *Discounted Cash Flow Analysis,* the Registration Statement fails to disclose the specific definition of "after-tax cash flows" utilized by Petrie in its analysis. The Registration Statement also fails to disclose: how many different distinct discount rates were utilized in the analysis and what those distinct discount rates were; the specific parameters of reserve category, development status and geographic location utilized to determine each of the discount rates; and the individual inputs and assumptions utilized by Petrie to derive each of the distinct discount rates in relation to the underlying parameters of reserve category, development status and geographic location. In addition, the Registration Statement fails to provide the full time period included in the analysis, as well as how the "exploration potential" was calculated and utilized in the analysis. The Registration Statement also fails to disclose the values for the present value of future estimated general and administrative expenses, commodity derivatives and other assets and liabilities, long-term debt, capitalized leases and net working capital, and how specifically those values were determined. The Registration Statement also fails to disclose how Petrie treated stock-based compensation expense in the analysis (i.e. as a cash or

non-cash expense), and how, if it all, Petrie incorporated Stone Energy's NOLs in the analysis.

48.     Second, with respect to the *Precedent Transactions for Stone Energy and Talos Energy Analysis*, the Registration Statement fails to disclose the individual multiples for EV/Boepd and EV/Boe for each of the selected transactions.  The Registration Statement also fails to disclose whether Petrie performed any type of quantitative benchmarking analysis for Stone Energy and/or Talos in relation to the target companies. Also, the Registration Statement fails to disclose how the values of commodity derivatives, tax attributes and exploration, seismic and other assets were estimated and what those values were as used by Petrie in the analysis.

49.     With respect to the *Precedent Transaction Analysis – Oil & Gas Corporate Transactions Analysis*, the Registration Statement fails to disclose for each of the selected transactions the individual multiples for: Purchase Price/CY Discretionary Cash Flow; Purchase Price/FY Discretionary Cash Flow; Total Investment/CY EBITDA; Total Investment/FY EBITDA; Total Investment/Proved Reserves; Total Investment/Current Production. The Registration Statement also fails to disclose the resulting enterprise value ranges that resulted from the application of each of the ranges of multiples and premiums as selected by Petrie. And the Registration Statement fails to disclose whether Petrie performed any type of quantitative benchmarking analysis for Stone Energy and/or Talos in relation to the target companies.

50.     With respect to the *Capital Market Comparison Analysis*, the Registration Statement fails to disclose for each of the selected public companies analyzed the individual multiples for: Market Value/2017E Discretionary Cash Flow; Market Value/2018E Discretionary Cash Flow; EV/2017E EBITDA; EV/2018E EBITDA; EV/Proved Reserves ($/BOE); EV/2017E Production ($/Boepd); and EV/2018E Production ($/Boepd). The Registration Statement also fails to disclose the resulting enterprise value ranges that resulted from the application of each of

the ranges of multiples, as selected by Petrie. And the Registration Statement fails to disclose whether Petrie performed any type of quantitative benchmarking analysis for Stone Energy and/or Talos in relation to the selected comparable companies.

51.     Finally, with respect to the *Going Concern Analysis,* the Registration Statement fails to disclose the individual inputs and assumptions utilized by Petrie to derive the discount rate range of 9.0% to 13.0% for both Stone Energy and Talos. The Registration Statement also fails to disclose whether the 2021 EBITDA to which the selected multiples were applied was the same as the 2021 EBITDA as shown in the "Financial Forecasts" of Stone Energy and Talos in the Registration Statement.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

52.     The Registration Statement also fails to disclose material information concerning the sales process.

53.     For example, the Registration Statement fails to state whether the confidentiality agreements Stone Energy entered into with the six parties other than Talos are still in effect and/or contain DADW standstill provisions that are presently precluding each and every of these six parties from making a topping bid for the Company.

54.     The disclosure of the terms of any standstill provisions is crucial to Stone Energy stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. This information is especially important where, as here, the Registration Statement is silent as to whether any confidentiality agreements contained a standstill agreement and whether any standstill agreements have been waived. Six other parties entered into confidentiality agreements with Stone Energy, and two specifically indicated interest in a transaction with Stone Energy: Company A and Company C. Yet the

16

Registration Statement is silent as to whether either of those companies may now be foreclosed from making a superior proposal.

55.     In addition, section 7.05(d) of the Merger Agreement prohibits the Board from waiving any previously executed standstill agreement (the "Anti-Waiver Provision"). Whether the Board agreed to that provision knowing that agreements with Company A, Company C, or any other party, contained such a standstill agreement, must be disclosed to Stone Energy stockholders before they decide on voting for or against the Proposed Transaction.

56.     The Registration Statement fails to disclose any information about prior or current work undertaken by Petrie for either Stone Energy or Talos, whether any future work has been considered, or whether Petrie is involved with financing arragements for the Proposed Transaction. Without such information, Stone Energy stockholders will not be able to consider whether any conflicts of interest exist that may have skewed or biased Petrie's financial analysis.

57.     In addition, the Registration Statement fails to disclose whether Stone Energy's financial projections were provided to any of the parties conducting due diligence with the Company, including Company A and Company C.

58.     The Registration also fails to disclose pertinent information concerning the process that took place between March 1, 2017 and November 21, 2017, including:

(a)     The exact number of potential interested parties that informally contacted Defendant Goldman between March 1, 2017 and March 14, 2017 to discuss a potential transaction, and whether any of those parties (besides Talos, Company A and Company B) entered into a confidentiality agreement with the Company;

(b)     Whether the Board determined the number and identities of the 28 parties contacted by Petrie and how many of those parties were financial sponsors and how many were

strategic partners;

(c)     What authority the Transaction Committee had concerning leading the sales process, negotiating with parties and deciding whether to enter into a transaction;

(d)     When Petrie contacted the two final parties that were contacted some time between April 18, 2017 and June 21, 2017 and who determined that Petrie should contact those parties;

(e)     When confidentiality agreements were entered into with Company E, Company B, and the final party not named;

(f)     Who were the potential counterparties informed by Petrie of the timeframe for submitting proposals as decided by the Board at the May 31, 2017 Board meeting;

(g)     Whether the Board discussed contacting the other parties who had engaged in the sales process, including Company A and Company C, before extending the exclusivity agreement with Talos on July 24, 2017, August 8, 2017, August 31, 2017, September 16, 2017, September 29, 2017, October 13, 2017, October 31, 2017, and November 14, 2017;

(h)     The Board's basis for believing that Talos was a better potential counterparty than Company A or Company C;

(i)     The concerns about the Proposed Transaction expressed by Franklin to Akin Gump on August 14, 2017 that were in addition to Franklin's desire for a 12-month post-closing lockup for Apollo Funds and Riverstone Funds; and

(j)     The Board's basis for delegating authority to Defendant Goldman on October 20, 2017 to negotiate the remaining items in the transaction documents and whether the authority included negotiations on board seats for the combined company.

59.     This information is necessary to provide Company stockholders a complete and

accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Stone Energy stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

60.    In addition, the Individual Defendants knew or recklessly disregarded that the Registration Statement omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

61.    Specifically, the Individual Defendants undoubtedly reviewed the contents of the Registration Statement before it was filed with the SEC.  Indeed, as directors of the Company, they were required to do so.  The Individual Defendants thus knew or recklessly disregarded that the Registration Statement omits the material information referenced above and contains the incomplete and misleading information referenced above.

62.    Further, the Registration Statement indicates that on November 19, 2017, Petrie reviewed with the Board its financial analysis of the Merger Consideration and on November 21, 2017 delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated that day, to the effect that the Merger Consideration was fair, from a financial point of view, to Stone Energy stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Petrie's financial analyses which has been omitted from the Registration Statement, and thus knew or should have known that such information has been omitted.

63.    Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks

injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     Defendants have filed the Registration Statement with the SEC with the intention of soliciting Stone Energy stockholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide the material information referenced above.

66.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Stone Energy, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

67.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

68.     Specifically, and as detailed above, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial

projections; (ii) the value of Stone Energy shares and the financial analyses performed by Petrie in support of its fairness opinion; and (iii) the sales process.

69.    Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Registration Statement is materially misleading and omits material information that is necessary to render it not misleading.   The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Petrie reviewed and discussed its financial analyses with the Board during various meetings, including on November 19, 2017, and further states that the Board relied upon Petrie's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

70.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

71.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

72.     The Individual Defendants acted as controlling persons of Stone Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Stone Energy and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to the time the Registration Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

75.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

76.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

77.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and her counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Registration Statement with the SEC or otherwise disseminating a Definitive Registration Statement to Stone Energy stockholders unless and until Defendants agree to include the material information identified above in the Definitive Registration Statement;

C.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  February 2, 2018                    **O'KELLY ERNST & JOYCE, LLC**

                                            */s/ Ryan M. Ernst*
                                            Ryan M. Ernst (#4788)
                                            Daniel P. Murray (#5785)
                                            901 N. Market St., Suite 1000
                                            Wilmington, DE 19801
                                            Tel.: (302) 778-4000
                                            rernst@oelegal.com
                                            dmurray@oelegal.com

                                            *Attorneys for Plaintiff*

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514